F I L E D
Clerk
District Court

MAY 23 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| HONG KONG ENERTAINMENT (OVERSEAS) INVESTMENTS LTD. and KWAN MAN,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS E. PEREZ, Secretary of the United States Department of Labor, *et al.*,<br><br>Defendants. | Case No. 1:14-CV-0028<br><br>**DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiffs Hong Kong Entertainment (Overseas) Investments, Ltd. ("HKE") and Kwan Man (collectively "HKE" or "Plaintiffs") brought this action for a judicial review against the Secretary of Labor and other officials (the "Secretary") of the U.S. Department of Labor ("DOL") pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, to appeal a Final Decision and Order of the DOL's Administrative Review Board ("ARB") issued on November 25, 2014. Plaintiffs seek to set aside the ARB's order assessing a civil money penalty ("CMP") of $191,400.00 against them pursuant to Section 16(e) of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") for repeated and willful violations of the overtime provisions of the Act on the grounds that the ARB's determinations were arbitrary and capricious, an abuse of discretion, and otherwise contrary to law. Plaintiffs further request that, in the event the Court finds that the imposition of a CMP was not improper, the matter be remanded to the DOL Administrative Law Judge ("ALJ") with instructions to hold a hearing on the merits regarding the propriety of the CMP

amount assessed against them. Plaintiffs further challenge the manner in which the DOL's Wage and Hour Division determines and assesses a CMP generally and/or as applied in this case as violative of their due process rights.

Pending before this Court is the Secretary's Motion for Summary Judgment. (ECF No. 33.) Plaintiffs filed an opposition (ECF No. 36), to which the Secretary replied. (ECF No. 39) The matter came on for a hearing, and the Court, having considered the written and oral arguments of counsel and having carefully reviewed the administrative record, now grants the Motion for Summary Judgment in favor of Defendants as to all three of Plaintiffs' claims.

## II. PRIOR ADMINISTRATIVE PROCEEDINGS

In November 1999, the DOL's Wage and Hour Division ("WHD") conducted an investigation of HKE dba Tinian Dynasty Hotel and Casino for FLSA violations. (Declaration of Donna Hart ¶ 4, ECF No. 13-146; Declaration of Terrence Trotter[1] ¶ 12, ECF No. 13-58.) At the time, Tinian Dynasty was the largest private employer on Tinian and one of the larger employers in the CNMI. (Trotter Declaration ¶ 11.) Kwan Man served as President, Treasurer, and Chairman of HKE's Board of Directors. (Declaration of Kwan Man ¶ 1, ECF No. 13-149.) WHD Investigator Donna Hart determined that HKE had failed to pay 436 employees, in violation of the FLSA overtime pay provision, a total of $591,535.02 from February 6, 1999, to February 9, 2001. (Hart Declaration ¶¶ 9-10.) In 2002, HKE signed a Consent Judgment enjoining it from future violations and requiring payment of the back wages due. (Consent Judgment at 2-3, ECF No. 13-141.)

In May 2007, WHD conducted another investigation of wages, hours, and other conditions and employment practices of HKE. (Declaration of Richard Hamilton ¶ 4, ECF No. 13-144;

---

[1] The Court notes that paragraphs 9 through 20 of Trotter's Declaration are erroneously numbered as paragraphs 5 through 16. The Court will cite to the applicable paragraph based on the correct numbering.

Trotter Declaration ¶ 5.) WHD Investigator Hamilton determined that HKE had committed FLSA violations by failing to pay regular and overtime compensation for 348 employees in the total amount of $309,816.21. (Hamilton Declaration ¶¶ 9-10; Trotter Declaration ¶ 6.) On July 2, 2007, HKE entered into a Back Wage Compliance and Payment Agreement ("Compliance Agreement," ECF No. 13-74) with WHD and agreed to pay 348 employees a total of $309,816.21 for violations of the FLSA overtime provision. (Compliance Agreement at 5-6.)

On August 31, 2007, Terrence Trotter, then Assistant District Director for the Hawaii District WHD (the "Administrator"), assessed $191,400.00 in civil money penalties ("CMPs") against HKE and Raymond Chan, Financial Controller for Tinian Dynasty and signatory to the Compliance Agreement, for willful and repeated violations of the FLSA during the period from March 16, 2007 to May 26, 2007. (Trotter Declaration ¶ 8 and *Notice of CMP Assessment for Tinian Dynasty and Raymond Chan* ("Notice of Penalty Determination"), ECF No. 13-58 at 7-8.) HKE and Chan timely filed an exception to the CMP assessment and the matter was referred to the Office of the ALJ. (USDOL Letter to Chief ALJ Vittone, ECF No. 13-1.) On February 4, 2011, the Administrator assessed CMPs for the same FLSA violations against Kwan Man. (Trotter Declaration ¶ 9; *Notice of CMP Assessment for Kwan Man*, ECF No. 13-58 at 9-10.) On April 29, 2011, the ALJ consolidated the CMP claims against HKE, Chan, and Kwan. (Order Granting in Part Pl's Mot. for Summ. Decision ("May 2012 ALJ Decision") at 2, ECF No. 13-101.)

On February 1, 2012, the Administrator filed a motion for summary decision, and HKE, Chan, and Kwan filed a motion for partial summary decision. (*Id*.) On May 18, 2012, the ALJ granted the Administrator's motion for summary decision, except with regard to Chan's personal liability as an "employer" under the FLSA. (*Id.* at 26.) Because CMPs were assessed against HKE, Kwan and Chan, but Chan's status could not be resolved through summary decision, the

ALJ concluded that she could not order payment of the CMP until Chan's status was determined. (*Id.*) The parties subsequently entered into a settlement agreement to dismiss Chan from the proceedings and on November 30, 2012, and the ALJ issued a Decision and Order ordering payment of CMPs, approving the settlement, and dismissing Chan without prejudice. (ALJ Order for Payment of CMP, ECF No. 13-104.) The ALJ reiterated her findings on the appropriateness of the CMP as supported by the record and the Summary Decision Order. (*Id.* at 8.)

HKE and Kwan timely appealed the ALJ's decision to the Administrative Review Board ("ARB"). On November 25, 2014, the ARB issued its Final Decision and Order. (ARB Decision, ECF No. 13-167) The ARB affirmed the ALJ's decision, holding that Plaintiffs willfully and repeatedly violated the FLSA's overtime provisions and ordering that HKE pay CMPs in the amount of $191,400.00 for such violations. (*Id.* at 10-11.) The ARB also affirmed the Administrator and ALJ's examination of the mandatory and discretionary factors for determining the amount of CMPs to assess for HKE's willful and repeat violations of the FLSA's overtime provisions. (*Id.* at 10.)

On December 29, 2014, Plaintiffs filed the present action, asserting that the ARB erred in affirming the ALJ's grant of summary judgment against HKE. (Complaint, ECF No. 1.) Specifically, Plaintiffs argue that the Compliance Agreement barred Defendants from assessing a CMP, that the calculation of the CMP amount was not supported by the record, and that the DOL's review and assessment of the CMP amount violated Plaintiffs' due process rights under the Fifth Amendment of the U.S. Constitution. (Compl. ¶¶ 34, 36, 40.) Defendants filed the pending motion for summary judgment as to all three claims.

### III.     LEGAL STANDARD

While the parties characterize their briefing as constituting cross-motions for summary judgment, this is not an inquiry under Fed. R. Civ. P. 56 as to whether there are disputed factual

4

issues for trial. Rather, this is a review on the merits under the APA. *See Klamath Siskiyou Wildlands Center v. Gerritsma,* 962 F. Supp. 2d 1230, 1233 (D. Or. 2013); *see also Sierra Club v. Mainella,* 459 F. Supp. 2d 76, 89 (D.D.C. 2006) ("[T]he standard set forth in Rule 56(c) does not apply [in an APA case] because of the limited role of a court in reviewing the administrative record."); *McCrary v. Gutierrez,* 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (judicial review of agency action under the APA limited to the administrative record).

In judicial review of an agency action, the summary judgment standard is modified by the APA which provides that the court shall review the record in the agency proceeding and shall "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court must affirm the agency's findings of fact if supported by substantial evidence. 5 U.S.C. § 706(2)(E). Substantial evidence constitutes "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Maka v. U.S.I.N.S.*, 904 F.2d 1351, 1355 (9th Cir. 1990) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (citation omitted).

In assessing whether the agency's findings are "arbitrary and capricious," the reviewing court must determine whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dept' of Agriculture*, 499 F.3d 1108, 1115 (9th Cir. 2007); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004) (citations omitted). This standard of review is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000) (citations omitted). "The 'arbitrary and capricious' standard is appropriate for resolutions of factual disputes implicating substantial agency expertise." *Akiak Native Community v. U.S. Postal Service*, 213 F.3d 1140, 1144 (9th Cir. 2000). "Purely legal

questions are reviewed de novo." *Id*. (citing *Wagner v. National Transp. Safety Bd.*, 86 F.3d 928, 930 (9th Cir. 1996)).

## IV. DISCUSSION

### A. The Compliance Agreement Does Not Preclude the Assessment of a CMP for the 2007 Investigation.

#### 1. *The Compliance Agreement is Subject to De Novo Review*

The Secretary argues that the relevant standard in this case is whether the agency action, findings, and conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (Mot. for Summ. J. ("MSJ") at 11 *citing* 5 U.S.C. § 706(2)(A).) HKE contends that the interpretation of the Compliance Agreement is subject to de novo review because the Agreement is "clear and unambiguous." (Opp'n at 4 *citing U.S. v. Dahan,* 369 F. Supp. 2d 1187, 1191 (C.D. Cal. 2005) The Secretary did not oppose this standard of review in his reply but addressed the various legal arguments that support the ALJ's conclusion. This Court agrees with HKE that interpretation of the Compliance Agreement is subject to de novo review.

As the district court in *U.S. v. Dahan* recognized, the arbitrary and capricious standard of review "only applies to limit judicial review of questions of fact found by the agency, and questions of law are freely reviewable by the courts. 369 F. Supp. 2d at 1191 (internal citations omitted). To the extent that the Court determines that the provisions of the contract are "clear and unambiguous," the Court "need not apply the 'arbitrary and capricious' standard, since determination of whether the contractual language is 'clear and unambiguous,' and interpretation of provisions deemed 'clear and unambiguous' are questions of law." *Id*.; *see U.S. v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1344 (9th Cir. 1981). Here, the parties are not contesting a question of fact in the Compliance Agreement but rather a question of law as to whether the Agreement precluded the assessment of a CMP. As the Court will address below, the Compliance Agreement is "clear and unambiguous" as to the assessment of a CMP with respect to future

6

violations and to the 2007 violations under the FLSA.

> 2. *Paragraph 11 of the Compliance Agreement is "Clear and Unambiguous" that the Administrator Reserves the Right to Assess a CMP for Future Violations under the FLSA.*

The Secretary points to the ARB's decision upholding the ALJ's conclusion that the Compliance Agreement did not address the issue of CMPs with regard to the 2007 violations. (MSJ at 12 *citing* May 2012 ALJ Decision at ECF No. 13-101, ARB Decision at ECF No. 13-167.) They found that "the sole reference to CMPs in the agreement states that the Administrator retained the right to seek them in connection with *future* violations." *Id.* HKE agrees that paragraph 11 "unequivocally expresses the intent that a CMP would be assessed for future violations only." (Opp'n at 6.) Specifically, paragraph 11 of the Compliance Agreement states the following:

> By entering into this agreement, the Wage Hour Division does not waive its right to conduct *future* investigations under the Fair Labor Standards Act and to take appropriate enforcement action, including assessment of civil money penalties, with respect to any violations disclosed by *such* investigations.

(Compliance Agmt. ¶ 11, ECF No. 13-74) (emphasis added). The Court agrees with both parties that paragraph 11 of the Compliance Agreement clearly and unequivocally expresses a right for the Administrator to assess a CMP for FLSA violations based on *future* investigations.

> 3. *It is "Clear and Unambiguous" that the Compliance Agreement Does Not Preclude the Assessment of a CMP with Respect to the 2007 Violations.*

The Secretary argues that the Compliance Agreement does not address the assessment of a CMP for the 2007 violations because it "fails to plainly establish that it was intended to encompass all matters, including CMPs, related to [HKE'S] 2007 violations." (MSJ at 12.) HKE agrees with the Secretary to the extent that the Compliance Agreement does not reserve the right to assess a CMP for the 2007 violations. (Opp'n at 5) ("DOL, which prepared the Compliance Agreement, does not reserve the right to pursue or assess a CMP based on the 2007

7

investigation."). However, HKE argues that the Agreement not only fails to reserve the right to pursue a CMP based on the 2007 investigation, the Agreement precludes it. HKE asserts that since paragraph 11 only addresses CMPs in the context of future investigations, it "precludes DOL from assessing any CMP based on the 2007 investigation[.]" (Opp'n at 5.) The Secretary contends that the ALJ correctly found, as affirmed by the ARB, that the Compliance Agreement and the cover letter that accompanied the transmittal of the Compliance Agreement to the Plaintiffs were consistent to establish that a CMP might still be assessed. (MSJ at 13 *citing* AR 01537, ECF No. 13-101 at 24.) The Secretary, as reasoned by the ALJ and adopted by the ARB, has the better argument.

The Compliance Agreement neither expressly reserved nor waived the right for the Administrator to assess a CMP for the 2007 violations. Paragraph 11 is the sole reference in the Agreement to any CMP. (*See generally* Compliance Agreement, ECF No. 13-101.) The Court is not persuaded by HKE's argument that the sole mention of a CMP with respect to future investigations demonstrates that the Administrator waived the right to assess a CMP for the 2007 violations. HKE relies on *U.S. v. Banco Internacional/Bital S.A.* to support this proposition; however, this case is distinguishable because the government's CMP claim was barred by *res judicata* principles as opposed to any contract dispute. 110 F. Supp. 2d 1272, 1275, 78-79 (C.D. Cal. 2000). HKE's reliance on *United Commercial Insurance Service, Inc. v. Paymaster Corp.* is also misplaced. In that case, the Court held that the defendant could not allege that the multi-defendant settlement agreement modified the ordinary rule that the single-defendant settlement reduces the liability of all remaining defendants equally since the contract lacked any terms indicating such intent. 962 F.2d 853, 857 (9th Cir. 1992). Similarly, HKE cannot allege that the Compliance Agreement's silence regarding CMPs for the 2007 violations deprives the Secretary of his statutorily mandated authority to assess CMPs upon a finding of a repeat or willful

violation of the FLSA's overtime provisions.

The FLSA provides that "[a]ny person who repeatedly or willfully violates [the FLSA's overtime provisions] *shall* be subject to a civil penalty not to exceed $1,100 for each such violation." 29 U.SC. § 216(e)(2) (emphasis added); *see* 29 C.F.R. § 578.3(a); *see also* 29 C.F.R. § 578.3(b), (c) (defining a "repeated" violation as where an employer previously violated the FLSA's overtime provisions and previously received notice of the violation from the Administrator and defining a "willful" violation as "where the employer knew that its conduct was prohibited by the Act or showed reckless disregard for the requirements of the Act"). Since the Compliance Agreement is silent as to a term, i.e. the determination of whether HKE was subject to a CMP based on repeat or willful violations of the FLSA's overtime provisions, it is "clear and unambiguous" that the Compliance Agreement does not preclude the assessment of a CMP for the 2007 violations.

       4.  *The Parol Evidence Rule Does Not Apply to Bar Consideration of Extrinsic Evidence as to the Assessment of a CMP for the 2007 Violations.*

The Secretary argues that the Compliance Agreement must be read in conjunction with the accompanying cover letter in which WHD Investigator Hamilton indicated that he lacked authority to assess CMPs and that signing the Agreement could reduce the amount of CMPs to be assessed. (MSJ at 13.) Since the cover letter is consistent with the Compliance Agreement and put HKE on notice that CMPs were still a possibility, the Secretary argues that it should be admitted to show that the Administrator made no promise to waive CMPs. (*Id.*) The Secretary's reply brief clarifies that he does not consider Hamilton's letter as extrinsic evidence but rather "part of the contract." (Reply at 2-3.) HKE contends, however, that Hamilton's letter *is* extrinsic evidence, that the letter is inconsistent with Hamilton's prior oral representation that signing the Agreement would avoid the imposition of a CMP for the 2007 violations, and that DOL improperly granted the summary decision since a genuine issue as to a material fact existed. (Opp'n at 9.) Hamilton's

9

letter stated, in relevant part:

> I do not assess civil money penalties in this office. I can only pass along the facts and my recommendations. It would be impossible to provide a good recommendation in a refusal to pay case. If your company has any hope of *reducing the penalties* at all, then failing to sign the agreements that state that you do commit to future compliance and the payment of all Back wages would destroy that hope. There would be I think no chance of *reducing the penalties* if you refuse to pay and in fact the penalties could be greatly increased.

(Hamilton Cover Letter, ECF No. 13-145) (emphasis added).

A district court's application of the parol evidence rule, an issue of state law, is reviewed under the same de novo standard applied to decisions concerning federal law. *Jinro America Inc. v. Secure Investments, Inc.,* 266 F.3d 993, 998-999 (9th Cir. 2001) (citing *Mastro v. Witt,* 39 F.3d 238, 241 (9th Cir. 1994)). The parol evidence rule bars "evidence of prior or contemporaneous agreements or negotiations to change or modify the terms of a binding integrated agreement." *Kim v. Baik,* 2016 MP 5 ¶ 23, 2016 WL 3034068 at *4 (N. Mar. I. 2016) (citing *Del Rosario v. Camacho,* 2001 MP 3 ¶ 68, 2001 WL 34883245 at *11 (citing Restatement (Second) of Contracts §§ 213 cmt. a, b, 215 (1981)). Under the parol evidence rule:

> 1) A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them.
>
> 2) A binding completely integrated agreement discharges prior agreements to the extent that they are within its scope.
>
> 3) An integrated agreement that is not binding or that is voidable and avoided does not discharge a prior agreement. But an integrated agreement, even though not binding, may be effective to render inoperative a term which would have been part of the agreement if it had not been integrated.

*Del Rosario v. Camacho* at *11 (*quoting* RS (2d) of Contracts § 213). Agreements or negotiations prior to or contemporaneous with the written agreement are admissible only to show 1) whether the writing is an integrated agreement, 2) the extent to which the agreement is integrated, 3) the meaning of the writing, 4) other invalidating causes, or 5) grounds for granting or denying rescission, reformation, specific performance, or other remedy. *Id.* (*citing* RS (2d) of Contracts §

10

214). An integrated agreement constitutes "a final expression of one or more terms of an agreement." *Id.* ¶ 71 (*quoting* RS (2d) of Contracts § 209(1)). The court must determine whether there is an integrated agreement prior to making a determination as to the application of the parol evidence rule. *Id.* (*quoting* RS (2d) of Contracts § 209(2)). Whether or not a written agreement is integrated "depends on the parties' intent, which must be resolved by consideration of relevant extrinsic evidence which explains but does not flatly contradict the writing." *Sherman v. Mutual Benefit,* 633 F.2d 782, 784 (9th Cir. 1980).

Here, the parol evidence rule does not apply because the Compliance Agreement was not totally integrated as it left out a term, i.e. the imposition of a CMP with respect to the 2007 violations. Whether a CMP would be imposed is a term that would naturally be left out of the Compliance Agreement since a CMP is dependent upon a finding of a repeat or willful violation of the FLSA's overtime provisions, and the Agreement entirely fails to discuss either of those factors. *See* 29 U.S.C. § 216(e)(2); *see* 29 C.F.R. § 578.3(a). The absence of an integration clause in the Agreement further bolsters this proposition. Moreover, HKE's expansive reading of the phrase "resolve this matter" as the Administrator intending to resolve all issues relating to the investigation, including the assessment of a CMP, through the Agreement is not supported by a reading of the entire agreement. The Court agrees with the Secretary that the "matter" the Administrator intends to resolve through the Agreement is nothing more than the "back wages" that are mentioned in the Agreement's preamble and in the paragraphs to follow. (Reply at 5.) Since the Compliance Agreement cannot be viewed as constituting a fully integrated agreement, the parol evidence rule cannot apply.

        5.    *The Cover Letter Constitutes Part of the Compliance Agreement Such That It Does Not Violate the Parol Evidence Rule.*

A cover letter may constitute a part of the agreement such that it does not violate the parol evidence rule. *See Richardson Eng'g Co. v. Int'l Bus. Machines Corp.,* 554 F. Supp. 467, 470 (D.

11

Vt. 1981), *aff'd sub nom. Richardson Eng'g Co. v. Int'l Bus. Machines, Inc.,* 697 F.2d 296 (2d Cir. 1982) ("Consideration of the cover letter does not, therefore, violate the parol evidence rule because the cover letter is part of the contract."); *Brown v. Financial Servs. Corp., Int'l*, 489 F.2d 144, 149 (5th Cir. 1974) ("a covering letter may constitute a part of the total agreement"); *Gateway Co. v. Charlotte Theatres, Inc.,* 297 F.2d 483, 486 (1st Cir. 1961) ("A covering letter may be part of the total agreement."). In *Richardson,* the district court determined that "[s]ince the cover letter in some respects attempts to modify the signed subcontract that it accompanied, the subcontract is not a complete integration of the parties' understanding." 554 F. Supp. at 470. Thus, consideration of the cover letter did not violate the parol evidence rule because the cover letter was "part of the contract." *Id.* In *Brown*, the cover letter summarized the content of a phone conversation concerning the agreement, discussed terms of the agreement, and accompanied the agreement during transmittal. 489 F.2d at 149. The cover letter also at least to some extent modified the terms of the agreement. *Id.* As such, the Fifth Circuit held that consideration of the cover letter did not violate the parol evidence rule because it was part of the contract. *Id.*

Here, the Compliance Agreement did not address the issue of a CMP for the 2007 violations, but the cover letter from Investigator Hamilton that accompanied it did. Under Restatement (Second) of Contracts § 202(2), "a writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." Raymond Chan's affidavit confirms that he received Investigator Hamilton's letter together with the Compliance Agreement on June 29, 2007. (Chan Declaration ¶ 11, ECF No. 13-60.) Investigator Hamilton explained in writing that he lacked authority over the assessment of a CMP, that another office would determine whether to assess a CMP in this case, and that he could only make a recommendation based on whether HKE signed the Compliance Agreement. (Hamilton Cover Letter, ECF No. 13-145.) Given that Investigator Hamilton transmitted the cover letter at the same time as the Agreement,

12

referenced and did not contradict any terms of the Agreement, and modified to some extent the lingering issue as to whether a CMP assessment would be imposed, the cover letter constituted a part of the agreement such that it does not violate the parol evidence rule. Reading the cover letter in conjunction with the Compliance Agreement, it is therefore unreasonable for HKE to believe that the Agreement precluded the assessment of any CMP for the 2007 violations.

It was not reasonable for HKE to rely on any oral statement made prior to receiving the cover letter and Agreement because the cover letter served to clarify the agreement between the parties. (Reply at 6.) Even if Investigator Hamilton did make such a statement, he is entitled to rescind that initial offer and make a new one with modifications prior to HKE's acceptance. *See* RS (2d) of Contracts § 42 ("An offeree's power of acceptance is terminated when the offeree receives from the offeror a manifestation of an intention not to enter into the proposed contract."). In *Doty v. Brunswick Corp.,* the Ninth Circuit dealt with a similar issue in which plaintiffs argued that in addition to receiving a letter of intent, there was a prior oral agreement between the parties which should constitute a second valid obligation. 959 F.2d 240, at *2 (9th Cir. 1992) (unpublished opinion). The letter of intent explicitly referenced the oral agreement, and the record reflected that plaintiffs accepted the letter without objection and performed the conditions therein. *Id.* As such, the Ninth Circuit held that the confirming letter "accepted without objection, supersedes and replaces any prior oral understanding." *Id.*; *citing* RS (2d) of Contracts § 209. In this case, HKE could not have reasonably relied on Investigator Hamilton's oral statement regarding no CMP assessment when Hamilton's cover letter referenced their prior discussion and HKE accepted the letter with the agreement without objection. The motion for summary judgment as to the first claim for relief is therefore granted.

/ /

**B. The Administrator's assessment of $191,400 as a civil money penalty for violations of the FLSA's overtime provisions and the ALJ and ARB's order affirming the assessment with an order to pay the CMP are supported by the record.**

On August 31, 2007, the Administrator assessed a CMP against Plaintiffs in the amount of $191,400.00 for violations of the FLSA's overtime provisions. (Notice of Assessment of CMP, ECF No. 13-58.) When examining both the Administrator and ALJ's decisions, the ARB concluded that they both properly considered the relevant factors for determining the amount of the CMPs for HKE's willful and repeat violations of the FLSA's overtime provisions. (ARB Decision at 10.) The Court agrees with the ARB and finds that the ARB's affirmation of the ALJ's decision is properly supported by the administrative record.

In determining the appropriateness of a CMP, the Administrator shall consider both the gravity of the violation and the size of the business. 29 U.S.C. § 216(e)(3); *see also* 29 C.F.R. § 578.4(a). The ALJ agreed with the Administrator's determination regarding these mandatory factors. The ALJ agreed that HKE's overtime violations were most serious because they were both repeat and willful. (ARB Decision at 8.) The Administrator noted that HKE had previously committed several violations of the FLSA, including failure to pay overtime wages, from 1999 to 2001. (Decl. of Terrence Trotter ¶ 8.) In 2001, the WHD investigator met with HKE, specifically Raymond Chan, to explain the FLSA violations and the requirements for future compliance. (*Id*.) Nevertheless, HKE repeated those same violations within an even shorter span of time during the period from March 16 to May 26, 2007. The ALJ further determined that the CMP assessed was appropriate given "the large number of employees involved, and the amount of wages that were owed to the employees[.]" (ARB Decision at 8.) With respect to the size of the business, the Administrator states in his declaration that Tinian Dynasty was the largest private employer on Tinian and one of the larger employers in the CNMI, which weighed in favor of assessing CMPs. (Decl. of Terrence Trotter ¶ 7.) The Court finds that the ARB did not err in affirming the ALJ's

decision that the Administrator properly considered the gravity of the violation and the size of the business when assessing the CMP for the 2007 violations.

In addition to the mandatory factors in the assessment of CMPs, the ALJ also concluded that the Administrator properly considered the discretionary factors set forth in 29 C.F.R. § 578.4(b). Where appropriate, the Administrator may consider other relevant factors in assessing a CMP, including but not limited to the following: (1) whether the employer made a good faith effort to comply with the FLSA; (2) the employer's explanation for the violations; (3) whether the employer has a history of previous violations; (4) the employer's commitment to future compliance; (5) the interval between violations; (6) the number of employees affected; and (7) whether there is a pattern to the employer's violations. 29 C.F.R. § 578.4(b). In determining the propriety of the Administrator's consideration of the discretionary factors, the ALJ examined each factor and noted the following:

    i. The Administrator concluded that it was "not apparent" that HKE made good faith efforts to comply with the FLSA's overtime provisions. This is because HKE's responsibilities were pointed out in the first investigation and the resulting Consent Judgment but were not carried out.

    ii. HKE explained that the reason for the violation was because "business was slow." The Administrator determined that this weighed in favor of assessing a CMP because "it did not indicate confusion about the law" or point to "an honest mistake," but rather showed "a conscious decision" to allow employees to work when HKE knew they could not be lawfully compensated.

    iii. HKE has had previous violations, which included the prior Consent Judgment that put HKE on notice that it "is subject to injunction against violations of the [FLSA]."

    iv. Since HKE signed the Compliance Agreement, the Administrator determined that HKE was committed to future compliance. However, the Administrator viewed this as "somewhat discredited" since HKE broke the promises made in the prior Consent Judgment.

    v. Since there was a six-year gap between HKE's prior and current violations, the Administrator determined that the large gap mitigated the CMP assessment.

/

    vi. The Administrator found that the large number of employees affected (348 employees) weighed in favor of a CMP.

    vii. Lastly, the Administrator recognized that there was a "pattern" to the violations since HKE has failed to pay wages when they were due, citing similarities between the violations in the prior and current investigations.

(ARB Decision at 9-10.) The Court finds that the Administrator thoroughly and properly considered the discretionary factors when determining the amount of CMPs to assess. The Administrator's findings were properly supported by the record, including but not limited to his own declaration (ECF No. 13-58), Investigator Hamilton's declaration (ECF No. 13-144), Investigator Donna Hart's declaration (ECF No. 13-59), the 2002 Consent Judgment (ECF No. 13-141), and the deposition and admissions of HKE officials referenced throughout the ALJ decision. Furthermore, HKE's main challenge as to the CMP amount rested almost entirely on the Administrator's reference in his declaration to the 2011 FLSA violations against HKE as weighing in favor of assessing a CMP amount for the 2007 violations. (Opp'n at 14.) While the Administrator mentioned the 2011 violations when assessing the discretionary factor "interval between violations," the ALJ did not find that the Administrator actually used this fact in assessing a higher CMP against HKE. (May 2012 ALJ Decision at 19) ("Looking at the Administrator's explanation, the mandatory factors in this case supported an assessment of the maximum $1,100.00 per violation CMP . . . But, as discussed, it looks like the reasonably long interval between violations and the Respondents' signing of the 2007 Compliance Agreement were used to reduce the CMP[.]").

  HKE made several other challenges to the Administrator's assessment of a CMP amount but the Court finds all of these arguments without merit. In challenging the Administrator's consideration of the discretionary factors, HKE contends that its 2007 violations were not "the most serious type" due to the interval between violations and the fact that this was the second overtime violation. (ARB Decision at 8.) The ALJ noted that the Administrator did consider

16

HKE's prior history and the six-year interval between violations as mitigating factors in determining the amount of CMPs to assess. (*Id.* at 9.) The FLSA provides that "[a]ny person who repeatedly or willfully violates section 206 or 207, relating to wages, shall be subject to a civil money penalty not to exceed $1,100 for each such violation. 29 U.S.C. § 216(e)(2). The ALJ noted that the Administrator assessed half of the allowable $1,100.00 in CMPs, or $550.00, for each of the overtime violations. (ARB Decision at 9; May 2012 ALJ Order at 19.)

HKE further contends that the Administrator failed take into consideration HKE's financial condition. (ARB Decision at 8.) The ARB recognized that both the Administrator and the ALJ considered HKE's financial condition in assessing the amount of CMPs. (*Id.* at 9.) The ALJ reasoned that not having the financial capability to pay employees "does not excuse violating the law," since HKE could have "decreased the size of its workforce to a size that it could afford," or otherwise changed or closed its business. (ARB Decision at 9; May 2012 ALJ Order at 19-20.)

Lastly, HKE argues that the CNMI was exempt from the FLSA's minimum wage requirements when WHD conducted the 2007 investigation, yet the Administrator calculated the amount of back wages owed pursuant to 29 C.F.R. § 778.315 to include regular wages in addition to overtime wages. (ARB Decision at 8.) Thus, HKE asserts that the CMP assessed is more than double the amount of overtime wages owed. (*Id.*) The ARB affirmed the ALJ's determination that the Administrator properly calculated the amount of back wages owed pursuant to 29 C.F.R. § 778.315 as including more than just the overtime wages alone. (ARB Decision at 9.) In determining the number of hours for which overtime compensation is due, "all hours worked" by an employee for an employer "must be counted" and that overtime wages "cannot be said to have been paid to an employee unless all the straight time compensation due him for the non-overtime hours" has been paid." 29 C.F.R. § 778.315. Section 778.315 of the C.F.R. makes no reference to and does not rely on minimum wage requirements in any way. Thus, the ALJ properly concluded

that HKE did not merely owe $87,486.56 in back overtime wages since its overtime obligations can only be satisfied once its regular wage obligations are met. (ARB Decision at 9.)

Based on this thorough examination, the Court finds that the ARB properly affirmed the ALJ and Administrator's application of the mandatory and discretionary factors in determining the amount of CMPs to assess against HKE. HKE has failed to demonstrate that the ARB's decision regarding the CMP amount assessed was unsupported by the record, arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. The motion for summary judgment as to the second claim for relief is granted.

### C. Whether DOL's Authority to Assess CMPs Violates Plaintiffs' Due Process

The Secretary moved for summary judgment as to HKE's due process claim arguing it is without merit based on the notice and opportunity HKE was afforded by the Administrator, as well as the independent review by the ALJ and the ARB of the Administrator's CMP assessment. In their opposition, Plaintiffs state that they are withdrawing due process claims. (Opp'n at 2.) Accordingly, the motion for summary judgment as to the third claim for relief is granted.

## V. CONCLUSION

Based on the foregoing, the Court concludes that, as a matter of law, the Compliance Agreement entered into by HKE and the Secretary did not preclude the imposition of civil money penalties for HKE's violations of the overtime provisions of the Fair Labor Standards Act. Furthermore, the Secretary has demonstrated the absence of a genuine dispute as to a material fact as the propriety of the Administrator's assessment of $191,400.00 in CMPs, as well as the holding of the ALJ and the ARB upholding the imposition of the CMP. HKE has failed to show that the ARB's decision to affirm the ALJ is unsupported by the administrative record, or that it is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. Accordingly, the Secretary's motion for summary judgment is granted as to all three claims. Judgment shall enter

in favor of the Defendants and against the Plaintiffs on Plaintiffs' three claims and affirming the ARB's Final Decision.

Conversely, judgment shall enter in favor of Defendants/Counterclaimants for their counterclaim (ECF No. 22-1) filed in their motion for leave to file an amended answer and assert a counterclaim. (ECF Nos. 17, 22.) The parties stipulated to the motion (ECF No. 31), and the Court granted it. (ECF No. 32.) The counterclaim requests that the Court affirm the ARB's final decision and order Plaintiffs to pay the full amount of the CMP to the Secretary. (ECF No. 22-1 at 10.) Since the Court has granted Defendants' motion for summary judgment as to all three claims and affirmed the ARB's decision, it now orders Plaintiffs to pay the civil money penalty to the Secretary in the total amount of $191,400.00 for their willful and repeat violations of the overtime provisions of the FLSA.

IT IS SO ORDERED this 23rd day of May, 2017.

RAMONA V. MANGLONA
Chief Judge